IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LINDA JOHNSON, *et al.*, | § | |
| | § | |
| *Plaintiffs,* | § | |
| VS. | § | CIVIL ACTION NO. H-07-1739 |
| | § | |
| MISSOURI CITY, *et al.*, | § | |
| | § | |
| *Defendants.* | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is the motion for summary judgment filed by defendants Missouri City, Frank Simpson, Ron Echols, Greg Nelson, James Joseph, and Donna Quackenbush (Docket Entry No. 40), and the response and motion to strike the motion for summary judgment filed by plaintiffs Linda Johnson and Andre Lewis (Docket Entry No. 46).

Based on consideration of the pleadings, the motions, the response, the record, matters of public record, and the applicable law, the Court **GRANTS IN PART** and **DENIES IN PART** the motion for summary judgment (Docket Entry No. 40), **DENIES** the motion to strike (Docket Entry No. 46), and **ABATES** and **ADMINISTRATIVELY CLOSES** this case for the reasons that follow.

## I.   BACKGROUND AND CLAIMS

Plaintiffs Linda Johnson and her adult son, Andre Lewis, proceeding *pro se* and *in forma pauperis*, bring this civil rights lawsuit seeking damages for the defendants' alleged

use of excessive force against Lewis during his arrest for burglary and the alleged false arrest and prosecution of Johnson for misdemeanor criminal harassment.[1]

Lewis alleges that, on January 17, 2006, Missouri City police officers used excessive force while apprehending and arresting him during his burglary of a neighbor's house. He claims that the officers handcuffed him, then "used mace, while plaintiff was physically restrained thrown down stairs, kicked in head and physically beaten all over his body." (Docket Entry No. 1, p. 3.) Lewis claims that he experienced difficulty breathing, and sustained head injuries and a broken finger. Defendants state that Lewis actively resisted arrest, and that reasonable force was necessary to overcome his resistence in order to apprehend and arrest him.

Johnson alleges that, a few days after Lewis's arrest, Missouri City police officers arrested her and charged her with misdemeanor criminal harassment of the owner of the burglarized house. Defendants state that Johnson placed a number of telephone calls to the owner of the house, pretending to be an insurance adjuster, and accused the homeowner of filing fraudulent insurance claims regarding the burglary. The homeowner claims that Johnson became belligerent and threatening during the telephone calls, which frightened the

---

[1] Plaintiffs improperly assert 42 U.S.C. § 14141 as the basis for federal subject matter jurisdiction in this lawsuit. (Docket Entry No. 1, p. 1.) Section 14141 authorizes the Attorney General to seek equitable and declaratory relief for certain constitutional violations involving state law enforcement agencies; it does not provide plaintiffs a private cause of action. Given the liberal construction afforded *pro se* litigants, the Court construes plaintiffs' lawsuit as one brought under 42 U.S.C. § 1983.

homeowner and caused her to notify the police. Plaintiff denies calling or threatening the homeowner, and claims that, because the criminal charges filed against her are based on false reports and perjured testimony, they were brought without probable cause and constitute false arrest. These misdemeanor charges remain pending in Fort Bend County, Texas.

Plaintiffs seek a declaratory judgment and injunctive relief, with recovery of compensatory and punitive damages.

## II. JOHNSON'S PENDING CRIMINAL PROSECUTION

Johnson was charged with the following criminal misdemeanor offense:

> LINDA DELL JOHNSON, hereafter styled the Defendant, heretofore on or about JANUARY 20, 2006, did then and there with intent to harass, annoy, alarm, abuse, torment and embarrass Terri Hazzard did then and there make repeated telephone communications in a manner reasonably likely to harass, annoy, embarrass and offend the said Terri Hazzard.

(Docket Entry No. 40, Exhibit 5, p. 9.) Johnson claims that these criminal charges and her arrest were without probable cause because they were based on fabricated evidence, false reports, and perjured testimony, in violation of her constitutional rights. It is undisputed that these criminal charges remain pending against Johnson in Fort Bend County, Texas. *State of Texas v. Linda Dell Johnson*, Case No. 123933, County Court at Law No. 2, Fort Bend County, Texas.

It is well settled under *Heck v. Humphrey*, 512 U.S. 477, 487 (1994), that, when a defendant claimant brings a section 1983 action against the arresting officers and their supervisors, the district court must first consider whether a judgment in favor of the claimant

would necessarily imply the invalidity of the underlying criminal conviction. If so, the claim is barred unless the claimant proves that the "conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 487.

A careful review of Johnson's allegations reveals that they constitute challenges to the validity of her pending criminal charges, which she claims are based on lies, fabrications, and perjury. The Court construes her claim as one for false arrest. Johnson submits voluminous exhibits and copies of police records, court documents, and similar materials, and explains in great narrative detail her disagreements with the factual statements made by the police officers, witnesses, and other individuals associated with her criminal case. Plaintiff claims that these individuals with whom she disagrees filed false affidavits and committed perjury. In short, plaintiff avers that her pending criminal prosecution violates her constitutional rights because it is false, and because it is false, she was arrested without probable cause. Under these circumstances, this section 1983 lawsuit necessarily would, if successful, impugn the validity of her pending criminal charges and any subsequent criminal conviction.

The Supreme Court has recently held that *Heck* does not apply to bar civil rights claims regarding *pending* criminal charges. *Wallace v. Kato*, 549 U.S. 384, 393 (2007). Where, as here, a pending civil rights lawsuit may have future implications for pending criminal prosecution, the proper procedure for the federal district court is to stay the section

4

1983 lawsuit "until the criminal case or the likelihood of a criminal case is ended." *Id.* "If the plaintiff is ultimately convicted, and if the stayed civil suit would impugn that conviction, *Heck* will require dismissal; otherwise, the civil action will proceed, absent some other bar to suit." *Id.*

Defendants seek summary judgment on the merits of Johnson's false arrest claim and argue that Johnson's arrest and criminal prosecution were, and are, lawful.  Because defendants are not entitled to summary judgment as a matter of law on the merits of Johnson's claim at this time, their motion for summary judgment seeking dismissal of her claim on its merits (Docket Entry No. 40) is **DENIED**.  Johnson's claim for false arrest is **STAYED** pending disposition of her misdemeanor criminal harassment charges in Fort Bend County, Texas.  Either party may move this Court to reinstate Johnson's lawsuit within thirty days after entry of a dispositive order or judgment in Johnson's pending criminal prosecution.

## III.  MOTION FOR SUMMARY JUDGMENT AS TO LEWIS'S CLAIMS

### A.    Standard of Review

Lewis's claims for defendants' use of excessive force in his arrest on suspicion of burglary would not impugn the validity of any ensuing criminal conviction for the underlying burglary.  Thus, his claims are not barred by *Heck* or subject to a stay under *Wallace*.

In deciding a motion for summary judgment, the district court must determine whether the pleadings, depositions, answers to interrogatories, and admissions on file, together with the summary judgment evidence, show that there is no genuine issue as to any material fact

5

and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Once the movant presents a properly supported motion for summary judgment, the burden shifts to the nonmovant to show with significant probative evidence the existence of a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). All evidence must be construed "in the light most favorable to the nonmoving party without weighing the evidence, assessing its probative value, or resolving any factual disputes." *Williams v. Time Warner Operation, Inc.*, 98 F.3d 179, 181 (5th Cir. 1996).

B.    Missouri City's Liability Under Section 1983

Lewis complains that the violation of his civil rights during his arrest was caused by the exercise of policies or procedures established by Missouri City, and that the policies or procedures enabled the individual defendants to act with deliberate indifference to his constitutional rights. In short, Lewis claims that the officers used excessive force against him in the exercise of official policies and procedures established by Missouri City.

Lewis has sued the individual defendants in both their individual and official capacities. Official capacity suits are treated as suits against the government entity. *Turner v. Houma Mun. Fire and Police Civil Serv. Bd.*, 229 F.3d 478, 483 (5th Cir. 2000). Therefore, his claims against the individual defendants in their official capacities merge with his claims against the City.

A municipality may be held liable under section 1983 when its official policies or customs violate the federal Constitution. *Monell v. Dep't of Social Services*, 436 U.S. 658,

690-91 (1978). A municipality does not face liability under a theory of *respondeat superior*. *Id.* at 691. Instead, a plaintiff must allege and prove three elements: a policymaker, an official policy, and a violation of constitutional rights whose moving force is the policy or custom. *Monell*, 436 U.S. at 694; *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). These three elements are necessary to distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself. *Piotrowski*, 237 F.3d at 578. An official policy may be either a written policy or "a persistent widespread practice of [municipal] officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Lawson v. Dallas County*, 286 F.3d 257, 263 (5th Cir. 2002). There must be a link between the identified policy and the constitutional violation, and the policy must be maintained with an objective deliberate indifference to a constitutionally protected right. *Id.* at 264. A description of the policy or custom and its relationship to the underlying constitutional violation cannot be conclusory and must contain specific facts. *Spiller v. City of Texas City*, 130 F.3d 162, 167 (5th Cir. 1997).

Defendant Frank Simpson, who holds the position of City Manager for the City of Missouri City, Texas, submitted an affidavit in support of the motion for summary judgment, in which he testifies as follows:

I did not participate in nor did I have any knowledge of the arrest of Andre Lewis on January 17, 2006 for burglary of a habitation. I also did not participate in nor did I have any knowledge of Linda Johnson being charged with the crime of harassment.

There is no official policy of Missouri City which would encourage or tolerate the use of excessive force by police officers or for arrests to be made without probable cause. In addition, since the beginning of my tenure as the City Manager for Missouri City [in 2004], I have not been made aware nor am I aware of any practice or procedure by the Missouri City Police Department which I felt or feel would inevitably lead to the violation of the constitutional rights of Missouri City citizens. If I was aware of such a practice or procedure I would direct my concerns to the Chief of Police. Based on my past experience as a City Manager in other cities, it is my observation that the Missouri City Police Department has a low number of complaints regarding the police department. I am certainly not aware of any wide spread practice or pattern of Missouri City police officers using excessive force against citizens or in arresting citizens when the officers do not have probable cause to believe those citizens have committed a crime. Based on my knowledge, education and experiences it is my belief and opinion that I have acted as a reasonable City Manager would have acted under the same or similar circumstances.

(Docket Entry No. 40, Exhibit 6.)

Lewis's conclusory allegation that the City promotes an "obvious policy of beating up youths" falls well short of constituting probative evidence raising a genuine issue of a material fact. As Lewis fails to establish, and the record does not disclose, an official policy or practice, or a violation of his constitutional rights whose moving force is such policy or custom, Missouri City is entitled to summary judgment as a matter of law dismissing Lewis's claims against it.

C.    Use of Excessive Force During Arrest

Lewis complains that the police officers handcuffed him, sprayed him with pepper spray, kicked him, threw him down the stairs, and physically beat him during his arrest. Lewis's allegations raise a Fourth Amendment claim for use of excessive force. *See Scott v. Harris*, 550 U.S. 372, 127 S. Ct. 1769, 1776 (2007).  To prevail on such claim, a plaintiff must establish (1) an injury, (2) which resulted directly and only from a use of force that was clearly excessive to the need, and (3) that the excessiveness was objectively unreasonable. *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005); *Harper v. Harris County*, 21 F.3d 597, 600 (5th Cir. 1994).  Claims of excessive force in context of arrests should be analyzed under the Fourth Amendment's objective reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989).

In his affidavit in support of the motion for summary judgment, Missouri City police officer Kevin Tullos testifies, in relevant part, as follows:

> On January 17, 2006, I was on-duty and working as a patrol officer for Missouri City and was dispatched to the residence of Terri Hazzard in reference to a possible burglary in progress.  I entered the back door of the residence with Officer Kevin Hubenak where forced entry had been made, and, after clearing the area downstairs to make sure no one was downstairs, we both made our way upstairs where we heard loud noises.  We began to clear the rooms upstairs when we heard over the radio from the officers outside that two males were attempting to jump out of a window from an upstairs room on the north side of the house.
>
> We located the subjects in the upstairs master bathroom where they had locked themselves in a separate room that contained the toilet.  At this time, Officer Hubenak repeatedly demanded that the subjects come out of the room, but they

9

did not comply with his orders.  Officer Hubenak began kicking the door in, and eventually we were able to pull the two males from the room, one of whom was Andre Lewis.  We forced Andre Lewis to the ground in the bathroom area and attempted to handcuff him while he was on his stomach. I held Andre Lewis' right arm behind his back and ordered him to put the other hand behind his back, but he would not comply.  After Mr. Lewis continued to ignore my repeated orders to put his hand behind his back, Officer Hubenak sprayed him with pepper spray, at which time Mr. Lewis complied with my orders and he was handcuffed.

After Mr. Lewis and the other male were handcuffed, the Missouri City EMS was called to check out Andre Lewis for exposure to pepper spray and to de-contaminate him.  While waiting for the EMS to arrive, I took Mr. Lewis into the master bedroom and searched him for stolen items.  I found numerous items belonging to Ms. Hazzard in his pockets and on his person.  When Missouri City EMS arrived, I immediately took Mr. Lewis to the front yard where he was treated.  I prepared a report regarding this incident, which is attached to this Affidavit as Exhibit "B."  I have never met or otherwise encountered Linda Johnson in person to the best of my knowledge.

It is my opinion, having the experience, law enforcement training and continuing education that I have had, that excessive force was not used against Andrew Lewis.  It is my opinion that the only force that was used against Andrew Lewis was that force which was reasonable and necessary under the circumstances at the time.  I do not believe that a reasonable police officer would believe that excessive force was used against Andrew Lewis based on the facts and circumstances of his arrest on January 17, 2006.

(Docket Entry No. 40, Exhibit 2.)

Police records from the Fort Bend County Juvenile Probation and Detention Center for Andrew Lewis show that Lewis was brought to the Center by the Missouri City Police Department a few minutes after midnight the morning of January 18, 2006.  (Docket Entry No. 40, Exhibit 7.) Lewis underwent mental and physical examinations and evaluations upon his arrival at the Center, and was given a drug test.  Due to the results of his mental health

screening, Lewis was referred for further psychological evaluation, and placed under "constant watch." Lewis tested positive for THC, a chemical present in marijuana. *Id.* Lewis's physical condition was evaluated as, "Juvenile appeared to be in good physical condition. Juvenile has no left thumb." *Id.*

According to documents submitted by defendants, Johnson reported Lewis's prior medical history to the Center as, "No joints in his arm, elbow is bowed. Missing thumb, Fetal Alcohol Syndrome." She referred to Lewis as "bi-polar" and "ADHD," and stated that he "used to have psychotic features." *Id.* Johnson also reported that Lewis had a history of asthma and eczema. Lewis was moved from the Center to IntraCare, where an x-ray taken January 26, 2006, showed a fracture to his little finger. Although the x-ray report states that Andre told his medical caretakers that he received the injury during his arrest but did not complain to anyone because "it didn't hurt bad enough" to request pain medications, the record also shows that Lewis reported that "he did not even know that his hand was broken until after Intra[C]are had x-rayed his hand and sent him back to detention"; he informed his care givers that the police "probably" caused it during his arrest. *Id.* On January 25, 2006, while still in custody at the Center, Lewis also complained of a limp following a basketball game. *Id.* Nothing in the probative summary judgment evidence relates this limp to the police officer's actions of January 17, 2006.

In plaintiffs' response to the motion for summary judgment, Lewis attaches two unauthenticated pages from his purported medical records. The first of these two pages is

dated May 5, 2006, and reflects an abnormal brain SPECT scan showing an approximate 10% decreased activity in the left parietal cortex. Nothing shows whether this was a recent or long-standing condition, or that it was in any way related to force used by the police officers in arresting him on January 17, 2006.[2] The second of the two pages is a pain assessment dated January 25, 2006, and reflects circled responses of "ache," "stabbing," "throbbing/pulsating" as to pain characteristics, and "movement" and "light touch/palpation" as circled responses for precipitating factors. Again, nothing shows that these responses related to any force used by the officers in arresting Lewis on January 17, 2006, particularly as the assessment was taken the same day Lewis complained of the limp following a basketball game at the Center. Regardless, the unauthenticated page does not reflect Lewis as the patient. Lewis presents no other summary judgment evidence purporting to establish that he was injured by excessive force used by the police officers during his arrest.

Even assuming Lewis provided probative summary judgment evidence of an injury sustained during his arrest, Lewis fails to show that the injury resulted directly and only from a use of force clearly excessive to the need and objectively unreasonable under the circumstances. The Fifth Circuit recognizes that, "There can be a constitutional violation only if injuries resulted from the officer's use of excessive force. Injuries which result from,

---

[2]Lewis summarily asserts that this brain scan shows "organic brain syndrome" caused by the police officers' alleged use of excessive force during his arrest. (Docket Entry No. 46, p. 46.) Neither the brain scan report nor any probative summary judgment evidence establishes that the scan shows organic brain syndrome constituting an injury caused by use of excessive force during Lewis's arrest.

for example, an officer's justified use of force to overcome resistence to arrest do not implicate constitutionally protected interests." *Johnson v. Morel*, 876 F.2d 477, 479-80 (5th Cir. 1989). Here, Lewis submits no affidavits or other evidence constituting probative summary judgment evidence that the officers' use of force to overcome his resistence to the arrest was unreasonable. His mother's statements and arguments as to what purportedly happened during Lewis's arrest are not probative summary judgment evidence, as she was not present during the robbery offense or her son's arrest, and her allegations are speculative and conclusory.

Because Lewis's claim of the use of excessive force has no factual or evidentiary basis in the record, the Court finds that there is no genuine issue of material fact as to his claim that the officers violated his Fourth Amendment rights by using excessive force during his arrest. Defendants in their individual capacities are entitled to summary judgment on this claim.

D.    Supervisory Liability/Failure to Train

Lewis claims that supervisory officials Ron Echols and Frank Simpson and the City are liable for the police officers' alleged use of excessive force. This Court determined above that Lewis failed to present probative summary judgment evidence that the police officers used excessive force during his arrest.

Regardless, under section 1983, supervisory officials are not vicariously liable for the actions of their subordinates. *Thibodeux v. Arceneaux*, 768 F.2d 737, 739 (5th Cir. 1985). A supervisor may only be held liable if there exists (1) his personal involvement in the

constitutional deprivation, or (2) a sufficient causal connection between the supervisor's conduct and the constitutional violation. *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1997). However, no probative summary judgment evidence shows that supervisors Ron Echols or Frank Simpson were present during Lewis's arrest.

The same standards of fault and causation apply to an individual supervisor's liability and the liability of a municipality for failure to train or supervise. *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 453 (5th Cir. 1994). Thus, Lewis's claims against Echols and Simpson in their individual capacities and his claims against the City are analyzed together.

To succeed on his claim, Lewis must show that: (1) the supervisor failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of Lewis's constitutional rights; and (3) the failure to train or supervise amounts to deliberate indifference. *Smith v. Brenoettsy*, 158 F.3d 908, 911-12 (5th Cir. 1998). With respect to the third prong, the Fifth Circuit has previously stated that, "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005). "For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* Proof of more than a single instance of lack of supervision causing a violation of constitutional rights is required before such lack of training can constitute deliberate

indifference. *Thompson v. Upshur County*, 245 F.3d 447, 458 (5th Cir. 2001). Instead, the plaintiff must generally demonstrate that the municipality or supervisor had notice of a pattern of prior acts "fairly similar to what ultimately transpired." *Davis*, 406 F.3d at 383; *see also Thompson*, 245 F.3d at 458. Liability cannot be imposed on a municipality under section 1983 unless deliberate action attributable to the municipality itself is the moving force behind the constitutional violation. *Snyder v. Trepagnier*, 142 F.3d 791, 795 (5th Cir. 1998).

Even assuming proof of a constitutional injury, Lewis presents no probative summary judgment evidence that it was caused by inadequate training of the police officers. "[It will not] suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct[.] And, plainly, adequately trained officers occasionally make mistakes; the fact that they do says little about the training programs or the legal basis for holding the city liable." *Pineda v. City of Houston*, 291 F.3d 325, 333 (5th Ci. 2002). Lewis has not alleged specific facts or presented probative summary judgment evidence linking the alleged lack of training, supervision, or discipline as the cause of his injuries, nor has he identified specific additional training, supervision, or discipline the officers should have received that would have prevented the underlying incident. *Id.* at 325.

Further, Lewis fails to raise a fact issue as to whether there was deliberate indifference on the part of City policymakers. There is no probative summary judgment evidence of

knowledge of a pattern of similar incidents or notice of a pattern of similar violations. *See Estate of Davis*, 406 F.3d at 383-84. Because Lewis's claims have no factual or evidentiary basis in the record, the Court finds that there is no genuine issue of material fact with regard to the claim that the defendants failed to train, supervise, and discipline the police officers. Defendants in their official and individual capacities are entitled to summary judgment on this claim.

E.      Lewis's State Law Claims

To the extent Lewis has raised claims for recovery under state law, a federal court may decline to exercise supplemental jurisdiction over state law claims under 28 U.S.C. § 1367(c)(3) where the district court has dismissed all claims over which it has original jurisdiction. Because Lewis's federal claims are dismissed, this Court declines to exercise jurisdiction over any state statutory or common law claims he may have asserted. Lewis's state law claims are **DISMISSED WITHOUT PREJUDICE**.

**IV.   MOTION TO STRIKE**

Plaintiffs move to strike the motion for summary judgment, and argue that the motion is based on fabricated police reports and affidavits. (Docket Entry No. 46.) Their conclusory disagreements with the defendants' factual allegations are not grounds for striking the motion for summary judgment, and their motion to strike is **DENIED**.

16

## V.   CONCLUSION

The Court **ORDERS** as follows:

1.    Defendants' motion for summary judgment (Docket Entry No. 40) is **GRANTED** as to the excessive force claim raised by Andre Lewis, and Lewis's claim is **DISMISSED WITH PREJUDICE**.

2.    Plaintiff Lewis's state law claims are **DISMISSED WITHOUT PREJUDICE**.

3.    Defendants' motion for summary judgment (Docket Entry No. 40) is **DENIED** as to the false arrest claim raised by Linda Johnson.

4.    Plaintiffs' motion to strike (Docket Entry No. 46) is **DENIED**.

5.    This case is **STAYED** and **ADMINISTRATIVELY CLOSED** until further order of this Court.

The Clerk will provide copies of this order to the parties.

Signed at Houston, Texas, on this the ___ day of March, 2009.


KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

17